IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| HOWARD WAYNE EDDINS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | CASE NO. 3:13-CV-00197-H |
| CENLAR FSB ) | |
| ) | |
| Serve: Gregory Tornquist, CEO ) | |
| 425 Phillips Boulevard ) | |
| Ewing, New Jersey 08618 ) | |
| ) | |
| and CT Corporation System ) | |
| 306 W. Main Street ) | |
| Suite 512 ) | |
| Frankfort, Kentucky 40601 ) | |
| ) | |
| and ) | |
| ) | |
| TRANS UNION LLC ) | |
| ) | |
| Serve: The Prentice Hall ) | |
| Corporation System ) | |
| 421 W. Main Street ) | |
| Frankfort, Kentucky 40601 ) | |

## VERIFIED COMPLAINT

COMES Howard Wayne Eddins (hereafter "Mr. Eddins"), by counsel, and for his

complaint against Cenlar FSB (herein "Cenlar") and Trans Union LLC (herein "Trans Union")

(herein referred sometimes collectively as "Defendants") states as follows:

## PRELIMINARY STATEMENT

1.     This is an action for compensatory, actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1681 *et seq.* (herein "Federal Fair Credit Reporting Act" or "FCRA") and additional applicable law.

## JURISDICTION AND VENUE

2.     The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p) and 28 U.S.C. § 1367.

3.     Venue is proper pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## PARTIES

4.     The Plaintiff is a natural person and a resident of the Commonwealth of Kentucky.  He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5.     Upon information and belief, Cenlar is a federally chartered savings association with its headquarters located at 425 Phillips Boulevard, Trenton, New Jersey 08618.

6.     Upon information and belief, Cenlar is servicer or subservicer of mortgage loans throughout the United States, including but not limited to mortgage loans in the Commonwealth of Kentucky.

7.     Upon information and belief, Trans Union is a limited liability company organized under the laws of the State of Delaware and having a principal office address of 555 West Adams, Chicago, Illinois 60661.

8.     Upon information and belief, Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681(f). Upon information and belief, Trans Union is regularly engaged

in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

9.      Upon information and belief, Trans Union disburses such consumer reports to third parties under contract in exchange for monetary compensation.

## FACTUAL BACKGROUND

10.     On or about April 10, 2009, Mr. Eddins executed a certain note (herein "Note") and mortgage (herein "Mortgage") (the Note and Mortgage are sometimes referred to collectively as "Loan") in favor of Taylor, Bean & Whittaker Mortgage Corp.  True copies of the Note and Mortgage are attached hereto collectively as **Exhibit A** and are incorporated herein by reference.  The Note and Mortgage pertained to the property commonly known as 6719 Harrods View Circle, Prospect, Kentucky 40059 (herein "Property").

11.     Upon information and belief, following the execution of the Note and Mortgage, the Loan was assigned and/or the servicing rights to the Loan were given to Cenlar.

12.     Mr. Eddins thereafter obtained a copy of his applicable Trans Union credit report (herein "Credit Report") and observed that the Credit Report contained a notation that the Loan status was "Derogatory."  The Credit Report indicated the ostensible reason for this status was because of a Chapter 13 bankruptcy filing.

13.     The Credit Report is a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

14.     Mr. Eddins has never filed a petition for relief under the bankruptcy code, and this information was inaccurate.

15.     On or about December 15, 2010, Cenlar received written notice (herein "December 15 Letter") informing it that the information being reported and/or furnished by it

concerning the Loan to applicable credit bureaus, including but not limited to Trans Union, was

inaccurate as he has never filed for bankruptcy. A true copy of the December 15 Letter is

attached hereto as **Exhibit B** and is incorporated herein by reference.

16.     Upon information and belief, Cenlar failed to respond to the December 15 Letter.

17.     Mr. Eddins subsequently contacted Cenlar to again inform it that he had never

filed for bankruptcy and that the information being reported or furnished by it to applicable

credit bureaus, including but not limited to Trans Union, concerning the Loan was inaccurate.

18.     In response, Cenlar wrote to Mr. Eddins on or about August 9, 2012 (herein

"August 9 Letter") and stated as follows:

> Dear Customer:
>
> We have completed our review of your account and determined that you have
> never filed nor completed any bankruptcy process. The major credit reporting
> agencies have been contacted and informed to remove any indication of
> bankruptcy from your credit profile. We sincerely apologize for any
> inconvenience this may have caused you.

A true copy of the August 9 Letter is attached hereto as **Exhibit C** and is incorporated

herein by reference.

19.     Based on Cenlar's representations in the August 9 Letter, Mr. Eddins believed

that the inaccurate information on his Credit Report would be promptly corrected and removed.

20.     Mr. Eddins was disturbed to learn, however, that Cenlar had either failed to report

its findings as outlined in the August 9 Letter to Trans Union as promised, or that Trans Union

had ignored Cenlar's corrected report with respect to the above-described inaccuracy (herein

"Disputed Item").

21.     This was highly upsetting to Mr. Eddins as he had recently entered into a contract

for the sale of the Property and had also entered into a purchase contract for a new home. Mr.

Eddins needed the information on his Credit Report to be accurate so that he could obtain financing for the purchase of his new home on favorable terms.

22.     The closing on the Property took place on September 7, 2012.  Proceeds necessary to pay off the Loan (herein "Payoff") were sent to Cenlar by UPS next day air delivery on September 10, 2012.  The Payoff was received by Cenlar on September 11, 2012.  Cenlar, however, lost or misplaced the Payoff and did not credit the payoff towards the Loan balance for several days following its receipt of same.

23.     Thereafter, Mr. Eddins contacted Trans Union directly to dispute the accuracy of the Disputed Item, which continued to appear on his Credit Report.

24.     Despite Mr. Eddins' lawful request for removal of the Disputed Item as provided for in the FCRA, Trans Union failed to remove the Disputed Item.  Furthermore, upon information and belief, Trans Union did not evaluate or consider any of Mr. Eddins' information, claims or evidence and did not make any and/or sufficient attempt to remove the Disputed Item within a reasonable time following its receipt of Mr. Eddins' dispute.

25.     On or about September 25, 2012, Trans Union sent an email to Mr. Eddins, which read as follows:

> . . . We have previously verified as accurate the items that are listed below. Therefore, under the Fair Credit Reporting Act, we consider this dispute frivolous and we will not reinvestigate the item(s) unless you can provide court papers or a recent, authentic letter from the creditor(s) that explains what information should be updated. . . .
>
> The names and addresses are listed below:
>
> CENLAR FSB
> Acct # ....

A true copy of this September 25, 2012 email (herein "September 25 Email") is attached hereto as **Exhibit D** and is incorporated herein by reference.

26.     On or about September 25, 2012, Mr. Eddins, through his attorney, contacted Cenlar to inform it of the continued inaccurate information that was being reported by it, which was disputed by Mr. Eddins.  A copy of this letter (herein "September 25 Letter") is attached hereto as **Exhibit E** and is incorporated herein by reference.

27.     On or about September 26, 2012, Cenlar sent a letter to Mr. Eddins (herein "September 26 Letter"), which stated that Cenlar had "submitted a request to the four major credit agencies to remove the Bankruptcy indicator from your credit report." A true copy of the September 26 Letter is attached hereto as **Exhibit F** and is incorporated herein by reference.

28.     Mr. Eddins obtained a copy of his Trans Union credit score on October 3, 2012. The report accompanying Mr. Eddins' Trans Union credit score indicated that his score was negatively impacted because "There is a bankruptcy on your credit report [TransUnion]."

29.     By this time, Mr. Eddins was very distraught since he was due to close on the purchase of his new home on October 11, 2012 (herein "New Home Closing"), just a few days later.  Mr. Eddins had been informed by his mortgage broker that the continued existence of the Disputed Item on his Credit Report was directly impacting his loan interest rate and his ability to qualify for certain mortgage programs.

30.     On October 4, 2012, Mr. Eddins, through his attorney, sent a letter to Trans Union (herein "October 4 Letter") by facsimile and by regular mail to inform it that his Credit Report contained inaccurate information, which was (still) disputed by Mr. Eddins.  A true copy of the October 4 Letter is attached hereto as **Exhibit G** and is incorporated herein by reference.

31.     On or about October 9, 2012, Trans Union sent a letter to Mr. Eddins (herein "October 9 Letter") stating "We have received the request . . . . The results will be forwarded to

him or her to review." A true copy of the October 9 Letter is attached hereto as **Exhibit H** and is incorporated herein by reference.

32.    On or about October 11, 2012, the New Home Closing took place.  Mr. Eddins loan rate and eligibility for certain loan programs relative to the purchase of his new home were directly and adversely impacted by the continued existence of the Disputed Item on his Credit Report.

33.    On or about October 11, 2012, Cenlar sent a refund of the Loan's escrow account. Because, however, Cenlar had lost or misplaced the Payoff, it did not timely credit the Payoff to the Loan.  Cenlar improperly reduced the amount of the escrow account refund to Mr. Eddins despite the fact that its own negligence caused the Payoff to not be timely credited to the Loan balance.

34.    On or about October 15, 2012, Trans Union sent a letter to Mr. Eddins (herein "October 15 Letter") stating "We have received the request . . . . The results will be forwarded to him or her to review." A true copy of the October 15 Letter is attached hereto as **Exhibit I** and is incorporated herein by reference.

35.    Mr. Eddins obtained a copy of his Credit Report on November 5, 2012.  The Disputed Item still appeared on his Credit Report despite his numerous demands for removal from both Cenlar and Trans Union. A true copy of the November 5 Credit Report is attached hereto as **Exhibit J** and is incorporated herein by reference.

## COUNT 1
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT (FRCA),
### 15 U.S.C. § 1681, *et seq*. – TRANS UNION

36.    Mr. Eddins realleges and incorporates paragraphs 1 through 35 above as if fully set out herein.

37.     As set forth herein, the acts and omissions of Trans Union violated the FRCA by its engaging in some or all of the following conduct:

(a)     willfully and/or negligently failing to conduct a proper and reasonable investigation concerning the Disputed Item after receiving notice of the dispute from Mr. Eddins, in violation of 15 U.S.C. § 1681i(a);

(b)     willfully and/or negligently failing to provide prompt notice of the Disputed Item and Mr. Eddins' dispute to the furnishing entity, in violation of 15 U.S.C. § 1681i(a);

(c)     willfully and/or negligently failing to provide all relevant information provided by Mr. Eddins regarding Disputed Item to the applicable furnishing entity, in violation of 15 U.S.C. § 1681i(a);

(d)     willfully and/or negligently failing to review and consider all relevant information submitted by Mr. Eddins concerning the Disputed Item, in violation of 15 U.S.C. § 1681i(a);

(e)     willfully and/or negligently failing to delete the inaccurate information from Mr. Eddins' Credit Report after reinvestigation, in violation of 15 U.S.C. § 1681i(a);

(f)     willfully and/or negligently failing to note the dispute of the inaccurate information in subsequent consumer credit reports, in violation of 15 U.S.C. § 1681i(c);

(g)     willfully and/or negligently failing to timely and property investigate the inaccurate information after receiving notice of the dispute of the Disputed Item from Mr. Eddins;

(h)     willfully and/or negligently failing to employ and follow reasonable procedures to assure maximum possible accuracy of Mr. Eddins' credit report, information and file, in violation of 15 U.S.C. § 1681e(b);

(i)     willfully and/or negligently failing to properly and timely delete the inaccurate information from Mr. Eddins' Credit Report and file despite being unable to verify the accuracy of the information and/or being provided with proof of its inaccuracy; and

(j)     willfully and/or negligently continuing to report the inaccurate, Disputed Item despite having knowledge of its inaccuracy and/or inability to be verified.

38.     As a result of the acts and omissions of Trans Union, Mr. Eddins has suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the humiliation and embarrassment of one or more credit denials.

39.     Trans Union's actions and omissions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the acts and omissions of Trans Union were negligent, entitling Mr. Eddins to recover damages pursuant to 15 U.S.C. § 1681o.

40.     Mr. Eddins is entitled to his recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT 2
## NEGLIGENCE AND NEGLIGENCE *PER SE* – TRANS UNION

41.     Mr. Eddins realleges and incorporates paragraphs 1 through 40 above as if fully set out herein.

42.     The acts and omissions of Trans Union and/or its agents and/or employees constitute negligence and negligence *per se* under applicable law.

43.     As direct and proximate result of Trans Union's negligence and negligence *per se*, Mr. Eddins is entitled to recover compensatory, consequential and other damages allowed by law.

## COUNT 3
## DEFAMATION AND DEFAMATION *PER SE* – TRANS UNION

44.     Mr. Eddins realleges and incorporates paragraphs 1 through 43 above as if fully set out herein.

45.     Trans Union has published statements to one or more creditors, prospective credit grantors and other credit reporting agencies and/or entities that the derogatory and inaccurate Disputed Item belongs to Mr. Eddins.

46.     Said false and defamatory statements, which were made intentionally, recklessly or negligently, caused injury to Mr. Eddins, including but not limited to his reputation. Furthermore, said false and defamatory statements tended to disinherit him and injure his reputation and/or expose him to public hatred, contempt, scorn, obloquy and/or shame.

47.     As a consequence of the publication of such statements by Trans Union and/or its agents or employees, Mr. Eddins is entitled to damages against Trans Union, including but not limited to compensatory, consequential and punitive damages.

## COUNT 4
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT (FRCA), 15 U.S.C. § 1681, *et seq.* – CENLAR

48.     Mr. Eddins realleges and incorporates paragraphs 1 through 47 above as if fully set out herein.

49.     As set forth herein, the acts and omissions of Cenlar violated the FRCA by its engaging in some or all of the following conduct:

(a)     willfully and/or negligently failing to conduct a proper and reasonable investigation concerning the Disputed Item after receiving notice of the dispute from Mr. Eddins, in violation of 15 U.S.C. § 1681i(a);

(b)     willfully and/or negligently failing to provide prompt notice of the Disputed Item and Mr. Eddins' dispute to the furnishing entity, in violation of 15 U.S.C. § 1681i(a);

(c)     willfully and/or negligently failing to provide all relevant information provided by Mr. Eddins regarding Disputed Item to the applicable furnishing entity, in violation of 15 U.S.C. § 1681i(a);

(d)     willfully and/or negligently failing to review and consider all relevant information submitted by Mr. Eddins concerning the Disputed Item, in violation of 15 U.S.C. § 1681i(a);

(e)     willfully and/or negligently failing to delete or cause to be deleted the inaccurate information from Mr. Eddins' Credit Report after reinvestigation, in violation of 15 U.S.C. § 1681i(a);

(f)     willfully and/or negligently failing to note the dispute of the inaccurate information in subsequent consumer credit reports, in violation of 15 U.S.C. § 1681i(c);

(g)     willfully and/or negligently failing to timely and property investigate the inaccurate information after receiving notice of the dispute of the Disputed Item from Mr. Eddins;

(h)     willfully and/or negligently failing to employ and follow reasonable procedures to assure maximum possible accuracy of Mr. Eddins' credit report, information and file, in violation of 15 U.S.C. § 1681e(b);

(i)     willfully and/or negligently failing to properly and timely delete the inaccurate information from Mr. Eddins' Credit Report and file despite being unable to verify the accuracy of the information and/or being provided with proof of its inaccuracy; and

(j)     willfully and/or negligently continuing to report the inaccurate, Disputed Item despite having knowledge of its inaccuracy and/or inability to be verified and/or willfully and/or negligently failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Disputed Item to consumer reporting agencies.

50.     As a result of the acts and omissions of Cenlar, Mr. Eddins has suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the humiliation and embarrassment of one or more credit denials.

51.     Cenlar's actions and omissions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the acts and omissions of Cenlar were negligent, entitling Mr. Eddins to recover damages pursuant to 15 U.S.C. § 1681o.

52.     Mr. Eddins is entitled to his recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT 5
## NEGLIGENCE AND NEGLIGENCE *PER SE* – CENLAR

53.     Mr. Eddins realleges and incorporates paragraphs 1 through 52 above as if fully set out herein.

54.     The acts and omissions of Cenlar and/or its agents and/or employees constitute negligence and negligence *per se* under applicable law.

55.     As direct and proximate result of Cenlar's negligence and negligence *per se*, Mr. Eddins is entitled to recover compensatory, consequential and other damages allowed by law.

## COUNT 6
## DEFAMATION AND DEFAMATION *PER SE* – CENLAR

56.     Mr. Eddins realleges and incorporates paragraphs 1 through 55 above as if fully set out herein.

57.     Cenlar has published statements to one or more creditors, prospective credit grantors and other credit reporting agencies and/or entities that the derogatory and inaccurate Disputed Item belongs to Mr. Eddins.

58.     Said false and defamatory statements, which were made intentionally, recklessly or negligently, caused injury to Mr. Eddins, including but not limited to his reputation. Furthermore, said false and defamatory statements tended to disinherit him and injure his reputation and/or expose him to public hatred, contempt, scorn, obloquy and/or shame.

59.     As a consequence of the publication of such statements by Cenlar and/or its agents or employees, Mr. Eddins is entitled to damages against Cenlar, including but not limited to compensatory, consequential and punitive damages.

## COUNT 7
## CONVERSION – CENLAR

60.    Mr. Eddins realleges and incorporates paragraphs 1 through 59 above as if fully set out herein.

61.    Cenlar has converted for its own use and failed to return funds rightfully belonging to Mr. Eddins without any legal right or privilege to do so, and without obtaining Mr. Eddins' permission.  The acts and omissions of Cenlar set forth above constitute conversion under applicable law.

62.    As a consequence of said conversion, Mr. Eddins is entitled to damages against Cenlar, including but not limited to compensatory and consequential damages.

## COUNT 8
## UNJUST ENRICHMENT – CENLAR

63.    Mr. Eddins realleges and incorporates paragraphs 1 through 62 above as if fully set out herein.

64.    Cenlar's failure to return the entire amount of the Loan's escrow account has unjustly enriched Cenlar to the detriment of Mr. Eddins.

65.    As a consequence of said unjust enrichment, Mr. Eddins is entitled to damages against Cenlar, including but not limited to compensatory and consequential damages.

## COUNT 9
## BREACH OF FIDUCIARY DUTY – CENLAR

66.    Mr. Eddins realleges and incorporates paragraphs 1 through 65 above as if fully set out herein.

67.    As the holder of funds in trust belonging to Mr. Eddins, Cenlar owed certain fiduciary duties to Mr. Eddins, including but not limited to the duties of good faith, loyalty and fair dealing.

68.    Cenlar has breached said duties by failing to refund monies belonging to Mr. Eddins, which monies were held in trust by Cenlar for Mr. Eddins' benefit.

69.    As a consequence of said breach of fiduciary duties, Mr. Eddins has been damaged, and is entitled to recover compensatory, consequential and punitive damages as allowed by law.

WHEREFORE, Mr. Eddins respectfully requests the following relief:

A.    A trial by jury on all issues so triable;

B.    An award of all damages suffered by Mr. Eddins or to which he is entitled, including all compensatory, consequential, statutory, actual and punitive damages allowed by law;

C.    Entry of an order directing that the Defendants immediately delete all of the inaccurate information from Mr. Eddins' Credit Report and credit files, including but not limited to the Disputed Item, and cease reporting all inaccurate information, including but not limited to the Disputed Item, to any and all persons and entities to whom it reports applicable consumer credit information;

D.    Entry of an order directing the Defendants to send to all persons and entities to whom it has reported any inaccurate information, including but not limited to the Disputed Item, within the last three (3) years and updated and corrected credit report;

E.    An award of his costs and attorney's fees incurred to the fullest extent allowed by law;

F.    An award of all pre-judgment and post-judgment interest at the maximum allowable rate; and

G.    All other relief to which Mr. Eddins is entitled.

## VERIFICATION

I, Howard Wayne Eddins, being duly sworn, state that I have read the foregoing Verified Complaint, and that the statements set forth therein are true and correct to the best of my knowledge, information and belief.

_____
Howard Wayne Eddins


COMMONWEALTH OF KENTUCKY      )
                             ) ss:
COUNTY OF JEFFERSON           )

Subscribed, sworn to, and acknowledged before me by Howard Wayne Eddins, this 1 ___ day of February, 2013.

_____
Notary Public, State at Large

My Commission Expires: March 31, 2016



Erin N. Reilly
Notary Public
State at Large, Kentucky

Respectfully submitted,

/s/ Kevin J. Fiet

Kevin J. Fiet
EDDINS · DOMINE LAW GROUP, PLLC
3950 Westport Road
Louisville, Kentucky  40207
Phone: (502) 893-2350
Fax: (502) 893-1949
E-mail: kfiet@eddins-law.com
*Counsel for Mr. Eddins*