UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:13-CV-197-H

HOWARD WAYNE EDDINS                                                                 PLAINTIFF

V.

CENLAR FSB                                                                            DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Howard Wayne Eddins, brings this action against Cenlar FSB ("Cenlar")[1] for allegedly furnishing inaccurate information about Eddins to consumer reporting agencies, which negatively affected his credit score. Specifically, Eddins poses the following six claims against Cenlar: Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") (Count IV), Negligence and Negligence Per Se (Count V), Defamation and Defamation Per Se (Count VI), Conversion (Count VII), Unjust Enrichment (Count VIII), and Breach of Fiduciary Duty (Count IX). Cenlar presently moves to dismiss Counts IV, V, VI, and IX. For the forgoing reasons, the Court will sustain Cenlar's motion in part and deny its motion in part.

I.

At this stage in the litigation, the facts are largely undisputed. On April 10, 2009, Eddins executed a note and mortgage for $384,700 in favor of Taylor, Bean and Whittaker Mortgage Corp. (the "Loan") pertaining to property at 6719 Harrods View Circle, Prospect, Kentucky 40059 (the "Property"). Taylor, Bean, and Whittaker either assigned the Loan or the servicing

---

[1] Eddins also sued Trans Union, LLC, alleging the following three claims against it: violations of the FCRA (Count I), negligence and negligence per se (Count II), and defamation and defamation per se (Count III). Eddins has settled his case against Trans Union. Trans Union is no longer a party to this case and claims against it have been dismissed. *See* ECF Nos. 24, 25.

1

rights to the Loan to Cenlar. Sometime thereafter, Eddins obtained a copy of his credit report from Trans Union, a consumer reporting agency, which contained a notation that the Loan status was "Derogatory". The ostensible reason for this status was a Chapter 13 bankruptcy filing (the "Disputed Item"). The negative bankruptcy reference on the credit report was inaccurate; Eddins' wife, not Eddins, filed for Chapter 13 bankruptcy.

On December 15, 2010, Cenlar received a letter from Eddins informing it that the information it furnished about Eddins to credit reporting agencies was inaccurate. Later, Eddins sent a second notification of the inaccurate reporting. On August 9, 2010, Cenlar sent Eddins a letter confirming its mistake and apprising Eddins that it contacted and informed the major credit reporting agencies to remove any indication of bankruptcy from his credit profile. ECF No. 1-3. Based on this representation, Eddins believed that the inaccurate information would be removed.

On September 7, 2012, Eddins sold the Property in order to purchase a new home. He sent the proceeds from the sale to Cenlar on September 10, 2012 to pay off the remaining balance on the Loan. However, Cenlar did not credit the Loan balance for several days. Therefore, when Cenlar released the money it held for Eddins in escrow, it improperly reduced the amount of the account refund to Eddins.[2]

Also on September 10, 2012, having realized that the Disputed Item remained on his credit report through the course of selling the Property, Eddins directly contacted Trans Union to inform it that the Disputed Item was inaccurate. Trans Union replied on September 25, 2012, with the following: "We have previously verified as accurate the items that are listed below. Therefore, under the Fair Credit Reporting Act, we consider the dispute frivolous and we will not

---

[2] The complaint and briefings do not provide further details of Cenlar's alleged mismanagement of the escrow account.

reinvestigate the item(s) unless you can provide court papers or a recent, authentic letter from the creditor(s) that explains what information should be updated. . . . Cenlar FSB . . ." ECF No. 1-4.

That day, Eddins contacted Cenlar to inform it of the continued presence of the Disputed Item on his credit report. On September 26, 2012, Cenlar responded stating that it "received [Eddins'] recent inquiry regarding [his] loan," that Eddins should "be advised that [it has] submitted a request to the four major credit agencies to remove the Bankruptcy indicator from [his] credit report," and that Eddins should further "be advised that this may take up to 30 days to reflect on [his] credit report." ECF No. 1-6.

On October 3, 2012, Eddins requested another credit report, assumedly from Trans Union. The Disputed Item remained. The following day, Eddins' counsel sent another letter to Trans Union disputing the inaccurate information. On October 11, 2012, Eddins was scheduled to close on the new home. During the closing, the mortgage broker told Eddins that the continued existence of the Disputed Item was directly impacting his loan interest rate and his ability to qualify for certain mortgage programs.

On November 5, 2012, Eddins' credit report request revealed that the Disputed Item remained. Resultantly, Eddins filed this lawsuit on February 4, 2013. Cenlar moves to dismiss a number of Eddins' claims under Federal Rule of Civil Procedure 12(b).

II.

To survive a motion to dismiss, a plaintiff "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.'" *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Accordingly, a complaint cannot "plead[] facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). A complaint also cannot satisfy its pleading burden through "labels and conclusions", or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. However, in reviewing a defendant's motion to dismiss, the Court will construe the complaint in the light most favorable to the plaintiff and accept factual allegations as true. *See Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007).

III.

As a general matter, Eddins argues that because the parties have yet to conduct discovery, he should be permitted additional time to engage in discovery in order to flesh out his claims. However, this argument is not a basis for denying Cenlar's motion, because Cenlar advances five substantive arguments challenging the pleadings. The Court will address each in turn.

A.

First, Cenlar argues that the FCRA contains no private right of action for Eddins to pursue his FCRA claims against Cenlar. As a furnisher of credit information, the FCRA regulates Cenlar's actions, but Cenlar can only be held liable in one of two ways under 15 U.S.C. § 1681s-2(a) and § 1681s-2(b). Many years ago, this Court thoroughly explained this remedial scheme in *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776 (W.D. Ky. 2003). "Subsection (a) broadly imposes duties upon furnishers of credit information to provide consumer reporting agencies with accurate information. . . . Subsection (d) provides that the requirements imposed by subsection (a) are only enforceable by government officials." *Id.* at 782. Accordingly, Eddins has no private right of action against Cenlar under § 1681s-2(a).

"In contrast, the second component of § 1681s-2, subsection (b), contains no limitations on the availability of remedies. Based on this clear statutory difference, the Court concludes that § 1681s-2(b) does allow a consumer to bring a private cause of action against a furnisher of credit information for either negligent, § 1681*o*, or willful, § 1681n, violations of the FCRA." *Id.* at 783. Importantly, however, "[s]ubsection (b) pertains only to the requirements imposed on a furnisher of information . . . to conduct an investigation after receiving notice of a dispute regarding the accuracy of information provided to a consumer reporting agency . . . from a consumer reporting agency. Under the statutory language, notification from a consumer is not enough." *Id.* at 784-85.

It appears that Cenlar concedes that Eddins has a private right of action under § 1681s-2(b), but argues that Eddins failed to plead that Cenlar in fact received notification of the Disputed Item from Trans Union, required to trigger Cenlar's liability under that provision. Indeed, Eddins has yet to provide affirmative evidence that Cenlar received information about the Disputed Item from Trans Union, but at the motion to dismiss stage, he does not necessarily have to provide affirmative evidentiary support to that end. Rather, Eddins must simply show that such notice was plausible, which the Court finds that Eddins has achieved.

Cenlar sent Eddins two letters indicating that it was in contact with the four major credit reporting agencies, of which Trans Union is one. *See* ECF No. 1-3 ("The major credit reporting agencies have been contacted and informed to remove any indication of bankruptcy from your credit profile"); ECF No. 1-6 ("Please be advised we have submitted a request to the four major credit agencies to remove the Bankruptcy indicator from your credit report."). Trans Union sent Eddins a letter suggesting that it had been in contact with Cenlar. *See* ECF No. 1-4 ("We have *previously verified* as accurate the items that are listed below. . . . Cenlar FSB.") (emphasis

5

added). Based on this evidence attached to the complaint, it is entirely plausible that Trans Union notified Cenlar of the Disputed Item, triggering Cenlar's liability under § 1681s-2(b).[3] Whether Eddins is entitled to relief under that provision is a matter of legal and factual dispute undeveloped thus far in the case and therefore not presently ripe for review. Accordingly, Cenlar's motion to dismiss Count IV on this ground is denied.

B.

Cenlar next argues that the FCRA's statute of limitations bars Eddins' FCRA claims. Under 15 U.S.C. § 1681p, "[a]n action to enforce any liability created under this subchapter may be brought in any appropriate United States district court . . . not later than the earlier of – (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." Because Eddins filed suit within five years of the onset of this action, the five year period of repose is not relevant. The Court must then determine whether Eddins brought suit within two years of the date of discovery. Cenlar argues that Eddins, at the very latest, learned of the Disputed Item on December 15, 2010, which is the date he sent his first letter to Cenlar. Because more than two years passed before Eddins filed this action on February 4, 2013, Cenlar argues that Eddins' claims must be dismissed as time-barred.

Eddins contends that the statute of limitations accrued at the earliest when he first notified Trans Union of the Disputed Item's inaccuracy. According to his argument, liability under § 1681s-2(b) is triggered "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute." 15 U.S.C. § 1681s-2(b)(1). According to 15 U.S.C. § 1681i(a)(2), "[b]efore the expiration of the 5-business-day period beginning on the date on which a consumer reporting

---

[3] The Court does not at this time find that such communication in fact occurred; rather, the Court finds that Eddins has provided sufficient support to raise an inference of plausibility that Trans Union notified Cenlar of the Disputed Item. The Court will entertain further motions on this issue should the lack of notice become evident.

6

agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute." In other words, as described above, a consumer reporting agency–Trans Union–triggers furnisher liability under § 1681s-2(b), when it notifies the furnisher–Cenlar–with notice of any inaccurate report–the Disputed Item. Eddins notified Trans Union of the Disputed Item on September 10, 2012, which likely represents the earliest possible date Trans Union could have notified Cenlar of the Disputed Item. If true, then the earliest possible date of accrual for the statute of limitations embodied in § 1681p is September 10, 2012, making Eddins' claim timely.

Neither party presents any case law supporting their positions on this issue. However, another district court within the Sixth Circuit provided a reasonable analysis that aligns with Eddins' approach. *See Sweitzer v. Am. Express Centurion Bank*, 554 F. Supp. 2d 788 (S.D. Ohio 2008). In *Sweitzer*, the Court explained,

> "Congress provided in the FCRA that the two-year statute of limitations runs from 'the date on which the liability arises,' subject to a single exception for cases involving a defendant's willful misrepresentation of material information." *TRW Inc.,* 534 U.S. at 28, 122 S.Ct. 441. Thus, generally, liability for a 15 U.S.C. § 1681s–2(b) violation arises 30 days after the furnisher of information does not comply with its obligations outlined in § 1681s2(b)(1)(A)-(D). *See* 15 U.S.C. §§ 1681–2(b)(2), 1681i(a)(1)-(2); *Briley v. Burns Int. SAFETOHIRE.COM, Inc.,* 78 Fed.Appx. 481, 484 (6th Cir.2003) (unreported). . . .
> [A] § 1681s–2(b)(1) violation is triggered only upon a consumer reporting agency providing notice to the furnisher of information. *See* 15 U.S.C. § 1681i(2)(A) ("the agency shall provide notification of the dispute to any person [i.e. the furnisher] who provided any item of information in dispute"); 15 U.S.C. § 1681s–2(b)(1) ("After receiving notice pursuant to 1681i(a)(2) ... with regard to the completeness and accuracy of any information provided to a consumer reporting agency, the [furnisher] shall [perform the obligations in (A)-(D) ]"); *Downs v. Clayton Homes, Inc.,* 88 Fed.Appx. 851, 853–854 (6th Cir.2004) (unreported) ("the plaintiff must show that the furnisher received notice from a consumer reporting agency, not

> the plaintiff, that the information is disputed"); *Lowe v. Surpas Resource Corp.,* 253 F.Supp.2d 1209, 1253–1254 (D.Kan.2003).

*Id.* at 796. This analysis is reasonable. In fact, an alternative conclusion whereby a claim could accrue before liability for that claim is triggered, seems confounding.[4] As stated above, the parties have not demonstrated when, or even if, Trans Union notified Cenlar of the Disputed Item. Until that fact is evident, the Court cannot render an affirmative decision as to the timeliness of Eddins' claims under the FCRA statute of limitations provision.

The motion to dismiss the FCRA claims must, therefore, be denied at this time.

IV.

On an entirely separate line of attack, Cenlar argues that the FCRA preempts Eddins' Kentucky law claims for negligence (Count V) and defamation (Count VI). The FCRA provides two preemption provisions, the enforcement of which has caused much confusion. In its earlier consideration of the statute, this Court thoroughly considered these provisions. At that time, it explained that:

> the FCRA contains two overlapping and potentially contradictory preemption provisions, § 1681t(b)(1)(F) and § 1681h(e), which limit the circumstances under which Plaintiff may bring his state common law claims. . . . The tension between these two provisions therefore results from the fact that § 1681h(e) permits state tort claims, but requires a higher standard of proof for those in the nature of defamation, slander, or invasion of privacy, while § 1681t(b)(1)(F) prohibits all state claims covered by § 1681s-2.

*Stafford*, 262 F. Supp. 2d at 784-85.

For the past decade, the preemptive scope of § 1681t(b)(1)(F), and its operation in relation to §1681h(e), has become the subject of much debate. In fact, courts have adopted three distinct approaches to interpreting FCRA preemption. First, some courts apply the "total

---

[4] According to the language of the statute, the precise accrual date may be even further out than Eddins conceives, because a § 1681s-2(b) violation occurs 30 days after the furnisher of information does not comply with its obligations under that provision.

8

preemption" approach, under which § 1681t(b)(1)(F) essentially subsumes §1681h(e) as it concerns furnishers, and preempts all state law claims arising out of the furnishing of credit information. *See, e.g.*, *Hasvold v. First USABank*, 194 F. Supp. 2d 1228 (D. Wyo. 2002). Second, and more recently, courts have adopted the "statutory" approach, whereby "§ 1681t(b)(1)(F) applies to preempt only state claims against furnishers brought under state statutes, while § 1681(h)(e) applies to preempt state tort claims." *Miller v. Wells Fargo & Co.*, 2008 WL 793676, *8 (W.D. Ky. Mar. 24, 2008); *see also Manno v. Am. Gen. Fin. Co.*, 439 F. Supp. 2d 418 (E.D. Pa. 2006). Some courts, following this Court's lead, have adopted the "temporal" approach, explained in the next section. *See Stafford*, 262 F. Supp. 2d at 785.

This Court thoroughly discussed its reasoning for selecting the temporal approach in *Stafford*, and after methodical review of subsequent case law on the subject, reaffirms that decision.

A.

The temporal approach operates as follows. Section 1681t(b) provides in relevant part, "No requirement of prohibition may be imposed under the laws of any State – (1) with respect to any subject matter regulated under . . . (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . ." 15 U.S.C. § 1681t(b)(1)(F). Section 1681h(e) provides in relevant part,

> Except as provided in sections 1681n and 1681*o* of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title . . . except as to false information furnished with malice or willful intent to injure such consumer.

Combining these two provisions through the temporal approach, this Court has said that

> section 1681t(b), the broader preemption provision, preempts state laws that impose obligations on furnishers of information once the furnishers know or have reason to know that the information reported is inaccurate; and, therefore, state laws imposing obligations on furnishers before they have knowledge of a possible inaccuracy are preempted exclusively by § 1681h(e). Notice of an inaccuracy here can come from a credit reporting agency or the consumer himself.

*Brown v. Federated Fin. Corp.*, 2006 WL 2847013, *2 (W.D. Ky. Sept. 28, 2006) (internal citation omitted). In sum, the temporal approach divides FCRA claims against furnishers into two distinct time frames: 1) after the furnisher received notice of the dispute, § 1681t(b) preempts state law claims relating to the furnishing of disputed information; and 2) before the furnisher received notice of the dispute, § 1681h(e) provides that plaintiffs may bring defamation, invasion of privacy or negligence claims, so long as plaintiffs can establish the furnisher's malice or willful intent to injure.

The Court's analysis in *Stafford*, and particularly its adoption of the temporal approach, has received considerable comment within the Western District of Kentucky and throughout the country: some of it in agreement, *see, e.g.*, *Massey v. MBNA Am. Bank, N.A.*, 2005 WL 3099011 (W.D. Ky. Nov. 17, 2005)[5]; *Pasternak v. Trans Union*, 2008 WL 928840, *3 (N.D. Cal. Apr. 3, 2008) ("This Court is persuaded by the detailed analysis in *Stafford* that § 1681t(b)(1)(F) has a more limited scope."); and some of it suggesting that the two other paths to constructing FCRA preemption are better applications of §§ 1681t and 1681h, s*ee, e.g.*, *Miller*, 2008 WL 793676, *8; *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1375 (N.D. Ga. Dec. 28, 2004) (calling this approach "strained at best"). This Court continues to believe that its analysis best harmonizes

---

[5] Some courts, including the Western District of Kentucky in *Massey*, have misconstrued the *Stafford* opinion as adopting an approach similar to the total preemption approach. The Court hereby reasserts that its intention in *Stafford* was to adopt the temporal approach, while mindful that in many situations, the practical effect of the two preemption provisions operating conjunctively will completely preempt some state law claims. *See Wolfe v. MBNA Am. Bank*, 485 F. Supp. 2d 874, 883 (W.D. Tenn. 2007).

the two potentially conflicting sections of the FCRA. Perhaps at this point some judges with a higher pay grade should resolve the issue.

In any event, some courts have said that this Court's analysis produces troubling results too favorable to furnishers of credit information, because Congress could not have intended furnishers of credit information to receive more protection from liability after they have received notice of inaccurate reports, at a time when it would seem that inaccurate reporting is even more egregious. *See Neal v. Equifax Credit Info. Servs., Inc.*, 2004 WL 5238126, *6 (N.D. Ga. Mar. 11, 2004). The Court would respectfully disagree with this argument, which misinterprets Congressional intent as evidenced in the statutory language of the preemption provisions. The temporal approach represents this Court's best judgment as to how sensibly blend the two preemption provisions together, such that each maintains substance. As conceived by Congress, the FCRA operates to hold furnishers of credit information liable for negligent or willful acts or omissions once those furnishers receive notice of the inaccuracy. To ensure uniformity of liability in such situations, Congress enacted a general remedial scheme against furnishers of credit information that hinges on notice. Prior to receiving notice, however, state laws still regulate furnisher activity, except to the extent § 1681h(e) preempts those claims.

Because the FCRA itself does not impose liability until the furnisher receives notice of the inaccurate information, this Court maintains that the temporal approach presents the option most consistent with Congressional intent. Applying the temporal approach, "the Court must first consider whether [the plaintiff's] claims are preempted by § 1681t(b)(1)(F), with the secondary provision of § 1681h(e) only factoring in the decision if the former does not apply." *Morgan v. HSBC Mortgage Servs., Inc.*, 2013 WL 978691, *5 (E.D. Ky. Mar. 12, 2013).

B.

Applying § 1681t(b)(1)(F), Eddins argues in Count V that the "acts and omissions of Cenlar and/or its agents and/or employees constitute negligence and negligence *per se* under applicable law." ECF No. 1. Initially, Eddins argues that Cenlar mismanaged his escrow account by misplacing Eddins' Loan payoff and failing to credit Eddins with all moneys due to him from the escrow account. Section 1681s-2 does not cover these claims, because they do not relate to furnishing information. Therefore, § 1681t(b) is inapplicable to those claims, and they are not preempted.

Eddins' remaining allegations of negligent acts and omissions concern the furnishing of inaccurate information to Trans Union, failing to inform Trans Union of the inaccuracy, and failing to clear Cenlar's own files of the inaccuracy. To the extent that these claims concern acts and omissions occurring after the first date upon which Eddins notified Cenlar of the inaccuracy of the Disputed Item, assumedly December 15, 2010, these claims fall within the ambit of § 1681s-2(b) and § 1681t(b) preempts them. However, necessarily, Eddins also asserts that the Disputed Item existed prior to Eddins' notice to Cenlar, because undoubtedly, Eddins did not realize the presence of the Disputed Item the moment it first appeared on his credit report. Because § 1681t(b) does not apply to claims prior to the time Cenlar received notice of the inaccuracy of the Disputed Item, this provision does not preempt that particular claim.

In Count VI, Eddins alleges that Cenlar "published statements to one or more creditors, prospective grantors, and other credit reporting agencies and/or entities that the derogatory and inaccurate Disputed Item belongs to Mr. Eddins." ECF No. 1. The defamation claim therefore directly relates only to the furnishing of information and failure to correct the inaccuracy, both covered by § 1681s-2(b). Accordingly, these claims are preempted to the extent they arise from

acts and omissions occurring after December 15, 2010. However, where the defamation stems from acts or omissions prior to that date, those claims survive this preemption provision.

The Court must review the remaining claims under the secondary preemption provision, § 1681h(e).

C.

Section 1681h(e) grants "furnishers of credit information with qualified immunity from suits 'proceeding in the nature of defamation, invasion of privacy, or negligence.'" *Stafford*, 262 F. Supp. 2d at 785 (quoting 15 U.S.C. § 1681h(e)). Plaintiffs may pursue these claim "if [they] can prove the [furnisher] acted maliciously[6] or with a willful intent[7] to injure." *Id.* at 788. The negligence claims relating to Cenlar's mismanagement of its escrow account do not concern the reporting of information", and therefore this provision cannot preempt those claims. Cenlar's motion with respect to these claims is denied.

Eddins' remaining factual allegations in support of his negligence claims fall under the weight of this provision. In Eddins' negligence count, he fails to allege that Cenlar acted with malicious or willful intent. True, this count incorporates the preceding paragraphs of the complaint into Count V, and some of those paragraphs allege willfulness. However, in a claim for common law negligence, such a vague incorporation paragraph cannot suffice to allege a greater level of scienter, especially where the rest of the count provides no indication thereof. Accordingly, the remaining negligence claims are dismissed as preempted under § 1681h(e).

In Count VI, Eddins specifically states that the "false and defamatory statements [] were made intentionally, recklessly or negligently." Therefore, except to the extent that the

---

[6] A statement is malicious if made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Stafford*, 262 F. Supp. 2d at 788 n.11.
[7] Courts have interpreted willful intent as "knowingly and intentionally committ[ing] an act in conscious disregard for the rights of others." *Id.* at 788 (quoting *Stevenson v. TRW Inc.*, 987 F.2d 288, 293 (5th Cir. 1993)).

defamation claim alleges negligence, Count VI's claims survive the preemptive scope at the motion to dismiss stage. Accordingly, the only defamation claims that survive FCRA preemption are those pertaining to statements Cenlar intentionally published prior to receiving notice of the inaccuracy of the Disputed Item.

V.

Cenlar next argues that the Kentucky one year statute of limitations for defamation claims bars Eddins' defamation claims. *See* KY. REV. STAT. ANN. § 413.140(1)(d). Eddins posits a reasonable argument that the defamation was ongoing, such that the one year statute of limitations did not accrue until the publication of the damaging statement ceased—that is, November 5, 2012 at the earliest, which is the last date upon which Eddins accessed his credit report prior to filing suit. However, as explained above, the only defamation claims that escape preemption predate the time when Cenlar received notice of the inaccuracy of the Disputed Item, which was December 15, 2010 at the latest, well outside the one year statute of limitations. Accordingly, the entirety of Count VI must be dismissed.

VI.

Cenlar finally argues that Count IX, alleging breach of a fiduciary duty, must be dismissed, because Cenlar, as a creditor, owes no fiduciary duty to Eddins, its debtor. The Supreme Court of Kentucky determined that a fiduciary "relationship is one founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991). Therefore, while a fiduciary relationship may manifest in a variety of situations, "[a] fiduciary duty requires more than the generalized

business obligation of good faith and fair dealing." *In re Sallee v. Fort Knox Nat'l Bank, N.A.*, 286 F.3d 878, 891 (6th Cir. 2002) (construing Kentucky law). Instead, the relationship exists "where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith *and* with due regard to the interests of the one reposing confidence." *Steelvest*, 807 S.W. 2d at 485 (quoting *Sec. Trust Co. v. Wilson*, 210 S.W.2d 336, 157 (Ky. 1948)) (emphasis added). Generally, "[e]xcept in special circumstances, a bank does not have a fiduciary relationship with its borrowers. 'The great weight of authority is that while the relationship between a mortgagor and mortgagee is often described as one of trust, technically it is not of a fiduciary character.'" *In re Sallee*, 286 F.3d at 894 (quoting *Forsythe v. BancBoston Mortgage Corp.*, 135 F.3d 1069, 1077 (6th Cir. 1997)).

Indeed, the Court doubts that the relationship between Eddins and Cenlar can be characterized as fiducial in character. To do so, Eddins must prove sufficiently special circumstances to warrant imposing a fiduciary duty on Cenlar. Although imposing such a duty on a bank with regards to its debtor, or a mortgagor with respect to its mortgagee, is rare, Kentucky courts have done so on at least two occasions. *See Steelvest*, 807 S.W.2d at 485-86; *Henkin, Inc. v. Berea Bank & Trust Co.*, 566 S.W.2d 420 (Ky. Ct. App. 1978). The nature of Eddins' relationship with Cenlar is unclear at this time, so the Court must refrain from deciding this issue until the relationship has been better defined. Accordingly, the Court must deny Cenlar's motion to dismiss as to Count IX.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant Cenlar FSB's motion to dismiss is SUSTAINED as to Count V, except as that count pertains to claims for negligent mishandling of Plaintiff's escrow account, and Count VI. Those claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant Cenlar FSB's motion to dismiss is DENIED with respect to all other claims.

The claims remaining are Count VI (FCRA violations), Count V (Negligent mishandling of Plaintiffs' escrow account), Count VII (conversion), Count VIII (unjust enrichment) and Count IX (breach of fiduciary duty).

cc: Counsel of Record